**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MARISA CICCOLA,

Plaintiff,

v.

Lake Zurich Police Officer TRACE PARLBERG, and VILLAGE OF LAKE ZURICH, a Municipal Corporation,

Defendants.

Case No. 25-cv-1641

***Jury Trial Demanded.***

## COMPLAINT

NOW COMES Plaintiff, MARISA CICCOLA, by and through her attorney, LAW OFFICE OF JORDAN MARSH LLC, complaining of the Defendants, TRACE PARLBERG and VILLAGE OF LAKE ZURICH, and states the following:

## JURISDICTION AND VENUE

1. This action arises under the Constitution of the United States, particularly the Fourth and Fourteenth Amendments to the Constitution of the United States, under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, §§ 1983 and 1988, and under the laws of the State of Illinois.

2. The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, §§ 1331 and 1343. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

3. This Court has jurisdiction over this action pursuant to Title 28 of the United States Code §§ 1331 and 1367, as Plaintiff asserts claims under federal law and the state law claims arise out of the same facts as the federal claims. Venue is proper in the United States District Court for the Northern District of Illinois under Title 28 of the United States Code, § 1391(b)(2), as the events complained of occurred within this district.

**PARTIES**

4. At all times relevant herein, Plaintiff MARISA CICCOLA (hereinafter "Marisa") was a resident of Elk Grove Village, Cook County, and resided in the Northern District of Illinois. At all relevant times, Marisa was a probationary police officer with the Itasca Police Department.

5. Defendant TRACE PARLBERG is sued in his individual capacity and was at all times relevant, a sworn police officer employed by Defendant VILLAGE OF LAKE ZURICH, and was acting within the scope of his agency, service and/or employment with the VILLAGE OF LAKE ZURICH, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

4. Defendant, VILLAGE OF LAKE ZURICH, is a government entity operating within the State of Illinois. The VILLAGE OF LAKE ZURICH is responsible for the actions of its employees while acting within the scope of their employment. At all times relevant to this action, VILLAGE OF LAKE ZURICH was the employer of Defendant PARLBERG.

**FACTS**

5. On November 16, 2024, at approximately 1:12 a.m., Marisa was driving on South Rand Road in Lake Zurich, when she was pulled over by Defendant Parlberg.

6. Marisa pulled over to the left side of the road.

7. Defendant Parlberg informed Marisa she had been stopped for speeding and requested her documentation.

8. Marisa provided the requested documentation and informed Defendant Parlberg she was coming from a friend's house in McHenry and that she was an off-duty Itasca police officer.

9. Defendant Parlberg asked Marisa if she had anything to drink, and she answered that she only had a glass of wine.

10. Defendant Parlberg went back to his vehicle.

11. Defendant Parlberg returned to Marisa's vehicle and asked more questions regarding what she was doing in McHenry.

12. Marisa informed Parlberg she had a glass of wine at around 8:00 pm, that she didn't eat, and that she slept until around 12:45 a.m. and decided to drive back home.

13. Defendant Parlberg informed Marisa that based on what he saw, her eyes and their conversation he wanted her to step out of the car.

14. Marisa asked if she could make a call, and Defendant Parlberg responded "we don't need to do that right now"

15. Defendant Parlberg asked Marisa if she was carrying her gun. Marisa responded it was in her purse.

16. Marisa stepped out of the car and walked to the back of it.

17. Defendant Parlberg administered sobriety tests to Marisa.

18. Parlberg administered a Horizontal and Vertical gaze nystagmus test.

19. Parlberg ordered Marisa to walk forward nine steps heel-to-toe and turn around and walk back the same way.

20. Marisa complied.

21. Next, Parlberg ordered Marisa to lift her foot up and to count from 1001 and not to stop until he told her to stop.

22. Marisa complied and lifted her foot up while counting to 1023.

23. Parlberg told her to stop.

24. Marisa complied.

25. After Marisa successfully completed all of Parlberg's sobriety tests, Parlberg asked Marisa if she would provide a preliminary breath test.

26. Marisa declined.

27. Parlberg went back to his vehicle and upon his return he informed Marisa that based on the speed, the lane usage, the fact she pulled over to the left side of the road, their conversation, her slow and mumbled speech, and her glassy bloodshot eyes, he would have to arrest her.

28. Parlberg explained that she had been driving in that state for approximately 25 minutes and that was not okay and informed her he was putting her under arrest for Driving Under the Influence of alcohol.

29. Parlberg handcuffed Marisa, arrested her for Driving Under the Influence of alcohol, and placed her in the back seat of his car to be transported to the station.

30. Marisa was charged with driving under the influence of alcohol, exceeding the speed limit, and improper lane usage.

31. Immediately after being released from the lockup, Marisa went to Alexian Brothers Medical Center in Elk Grove Village, where she took a blood test to measure the amount of alcohol in her system.

32. Marisa's blood test came back with a level of less than 10 of alcohol in her blood, which the attending physician deemed "normal and not significant".

33. The attending physician, Dr. Kristen R. Maguire, indicated in her records that "[e]ven if [Marisa] did have her blood work drawn closer to the time of her arrest I have a very very low suspicion that she would have been significantly clinically intoxicated".

34. Parlberg noted in his report that he observed no clues of impairment on the one leg stand test.

35. Parlberg noted in his report that he detected no odor of alcohol on Marisa's breath.

36. Defendant Parlberg's report contained numerous false statements, including but not limited to:

a. That Parlberg "observed both passenger side tires of [Marisa's] sedan cross over the center white dotted line and enter the right through lane before returning back to the left through lane", that he "watched both driver side tires of the sedan cross over the left white fog line and drive along the shoulder of the road before returning to the left through lane", and that he "saw similar lane violations as the sedan continued southbound on US Route 12."

b. That Marisa's eyes appeared bloodshot and glassy.

c. That Marisa had slurred speech.

d. That Marisa's muscle tone "appeared flaccid".

e. That Marisa took an incorrect number of steps during the heel-to-toe test.

f. That Marisa raised her arms to maintain balance on the last nine steps of the heel-to-toe test.

g. That Marisa "made an incorrect turn" and "stepped backward and pivoted on her foot instead of taking a series of small steps around her planted foot" during the heel-to-toe test.

h. That Marisa "stopped walking" during the heel-to-toe test.

37. Defendant Parlberg justified his determination that Marisa was impaired, in part, because he "observed [Marisa's vehicle] come to a stop in the median of US Route 12 when signaled to stop, rather than to the right side of the road".

38. Marisa had been in the left lane of the road when Parlberg, also in the left lane, activated his police lights.

39. Given that she was already in the left lane, it made sense for Marisa to pull over to the left rather than crossing over the right lane to pull over on the right. Moreover, pulling over to the left ensured that Parlberg would be safer when speaking with her than if she had pulled over on the right shoulder.

40. In any event, the fact that Marisa pulled over to the left was not indicative of impairment.

41. On January 22, 2025, the court dismissed the DUI charges with prejudice.

42. Marisa was not intoxicated or impaired at the time of the incident.

43. Marisa did not demonstrate signs of intoxication or impairment at the time of the incident.

44. Simply being arrested and charged with Driving Under the Influence of alcohol could have had grave consequences for Marisa's career.

## COUNT I – FEDERAL CLAIM
## UNLAWFUL DETENTION
## DEFENDANT PARLBERG

45. Each paragraph of this Complaint is incorporated as if restated fully herein.

46. Defendant caused Marisa to be unnecessarily detained without reasonable suspicion or probable cause to believe she had committed any crime or offense other than speeding, which did not require further investigation, in violation of the Fourth Amendment to the U.S. Constitution.

47. Alternatively, Defendant Parlberg detained Marisa for an unnecessary and unreasonable amount of time under the circumstances.

48. As a proximate result of Defendants' misconduct, Marisa suffered loss of liberty, fear, mental anguish, humiliation and emotional pain and suffering.

**COUNT II – FEDERAL CLAIM**
**MALICIOUS PROSECUTION**
**DEFENDANT PARLBERG**

49. Each paragraph of this Complaint is incorporated as if restated fully herein.

50. Defendant Parlberg initiated and continued criminal charges against Marisa without probable cause and with malice, in violation of the Fourth Amendment to the U.S. Constitution.

51. Defendant Parlberg accused Marisa of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Marisa without any probable cause for doing so, in violation of her rights secured by the Fourth and Fourteenth Amendments to the U.S. Constitution.

52. The criminal case against Marisa terminated in a manner favorable to Marisa and indicative of her innocence.

53. As a proximate result of Defendant Parlberg's misconduct, Marisa suffered loss of liberty, fear, mental anguish, humiliation and emotional pain and suffering.

**COUNT III – STATE CLAIM**
**MALICIOUS PROSECUTION**
**DEFENDANTS PARLBERG AND VILLAGE OF LAKE ZURICH**

54. Each paragraph of this Complaint is incorporated as if restated fully herein.

55. Defendant Parlberg, and Defendant Village of Lake Zurich, by and through its agent, Defendant Parlberg, initiated and continued criminal charges against Marisa without probable cause and with malice.

56. The criminal case against Marisa was dismissed on January 22, 2025, in a manner favorable to Marisa and indicative of her innocence.

57. As a proximate result of Defendant's misconduct, Marisa suffered loss of liberty, fear, mental anguish, humiliation and emotional pain and suffering.

**COUNT IV – STATE CLAIM**
**INDEMNIFICATION**
**DEFENDANT VILLAGE OF LAKE ZURICH**

58. Each paragraph of this Complaint is incorporated as if restated fully herein.

59. At all relevant times, Village of Lake Zurich was the employer of Defendant Parlberg.

60. Defendant Parlberg committed the acts alleged above under color of law and in the scope of his employment as employee of the Village of Lake Zurich.

61. Illinois law provides that government entities are directed to pay any tort judgment for any damages for which employees are liable within the scope of their employment activities.

62. Should Defendant Parlberg be found liable on one or more of the claims set forth above, Plaintiff MARISA CICCOLA demands, pursuant to Illinois law, that their employer, Defendant Village of Lake Zurich, be found liable for any judgment plaintiff obtains against Defendant Parlberg, as well as attorney's fees and costs awarded, and for any additional relief this Court deems just and proper.

**PRAYER OF RELIEF (ALL COUNTS)**

For the foregoing reasons, the Plaintiff MARISA CICCOLA prays for judgment against Defendants in a fair and reasonable amount, including compensatory and punitive damages, attorney fees and costs, and for any additional relief this Court deems just and proper.

**JURY DEMAND**

The Plaintiff MARISA CICCOLA requests a trial by jury.

Respectfully submitted,
MARISA CICCOLA

/s/ Jordan Marsh
*Attorney for the Plaintiff*

**LAW OFFICE OF JORDAN MARSH LLC**
5 Revere Drive Suite 200
Northbrook, IL 60062
(224) 220-9000
jordan@jmarshlaw.com